**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IVAN ROMERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 9454 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| LAKESHORE RECYCLING SYSTEMS | ) | |
| and INTERNATIONAL BROTHERHOOD | ) | |
| OF TEAMSTERS, LOCAL 731, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Ivan Romero worked as a residential driver at Lakeshore Recycling Systems ("LRS") from May 31, 2022 until July 2, 2024, when LRS terminated his employment for failure to follow safety protocols. Romero subsequently filed a grievance with his union, the International Brotherhood of Teamsters, Local 731 ("Local 731"), arguing that his termination lacked just cause and therefore violated a collective bargaining agreement ("CBA") between LRS and Local 731. After Local 731 denied his grievance, Romero filed this lawsuit asserting a claim against LRS for breach of the CBA in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and a claim against Local 731 for breach of the duty of fair representation under Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b). Romero further asserted a claim against Local 731 for violations of Title I of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 *et seq*., alleging that Local 731's denial of his grievance violated his rights of speech and assembly. On April 22, 2026, the Court granted Defendants' motions for summary judgment after finding that Romero has not established triable issues of material fact as to any of his claims. Doc. 40.

On May 22, 2026, LRS and Local 731 both filed bills of costs. LRS seeks to recover $4,212.12 in transcript and copying fees and Local 731 seeks to recover $3,555.85 in summons and subpoena, transcript, and copying fees. On June 26, 2026, Romero filed objections to Defendants' bills of costs, arguing that an award of costs would be inequitable and barred by Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4). Having reviewed the parties' submissions and finding that the requested costs are appropriate, reasonable, and necessary, the Court taxes costs in favor of Defendants and against Romero in the amounts requested.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d), unless a federal statute, the Federal Rules, or the Court provides otherwise, the prevailing party in litigation is entitled to costs. Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including fees for service of summons and subpoenas, fees for "transcripts necessarily obtained for use in the case," and fees for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party maintains the burden of establishing that the potentially recoverable costs it incurred were reasonable and necessary. *Trs. of Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If the prevailing party can satisfy that burden, the losing party bears the burden of showing that the costs are inappropriate. *Beamon*, 411 F.3d at 864. The denial or reduction of costs may be warranted based on the prevailing party's misconduct or the losing party's indigence. *See Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). The Court enjoys "wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

## ANALYSIS

### I.  Appropriateness of Costs

The Court begins by addressing Romero's arguments regarding the appropriateness of awarding costs because these issues impact whether Defendants can recover any costs in this case.  As to LRS, Romero contends that it would be inequitable to award costs because "[LRS's] arguments were never ruled on, and this court did not determine that they did not violate Mr. Romero's CBA rights."  Doc. 49 at 2.[1]  Romero's argument is entirely perfunctory and lacks citation to any supporting authority, resulting in waiver.  *See J&J Sports Prods., Inc. v. Rafiq*, No. 1:17-CV-07347, 2019 WL 10784502, at *1 (N.D. Ill. Sept. 30, 2019) (overruling objections to bill of costs because "defendants provide no argument to support these objections" and "[p]erfunctory undeveloped arguments, that are not supported by pertinent authority, are waived" (quoting *Davis v. Carter*, 452 F.3d 686, 691–92 (7th Cir. 2006))).

Turning to Local 731, Romero argues that Section 101(a)(4) of the LMRDA precludes Local 731 from recovering costs in this case.  As relevant here, Section 101(a)(4) states:

> No labor organization shall limit the right of any member thereof to institute an action in any court . . . irrespective of whether or not; the labor organization or its officers are named as defendants or respondents in such action or proceeding[.]

---

[1] To be clear, although the Court did not substantively address Romero's breach of the CBA claim on summary judgment, it does not follow that his claim against LRS is still "unsettled."  Doc. 49 at 2.  As the Court explained when ruling on Defendants' motions for summary judgment, Romero's claims against LRS and Local 731 "are known as 'hybrid' claims, because they 'are interlocking in the sense that neither is viable if the other fails.'"  Doc. 40 at 8 (citing *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003)).  Romero could therefore only maintain his § 301 claim against LRS if he "first establish[ed] that the union breached its duty of fair representation in processing his grievance."  *Olsen v. United Parcel Serv.*, 892 F.2d 1290, 1293 (7th Cir. 1990).  And because Romero failed to present sufficient evidence to create a triable issue of material fact with respect to the duty of fair representation claim, he necessarily could not maintain his § 301 claim against LRS.  Doc. 40 at 13.

29 U.S.C. § 411(a)(4). In Romero's view, Local 731's bill of costs violates this provision by "attempt[ing] to charge a member for availing himself of his protected right to sue." Doc. 49 at 2–3.

The few cases addressing this issue have concluded that Section 101(a)(4) does not preclude a prevailing union defendant from recovering costs under Rule 54(d). In *Vought v. Teamsters General Union Local No. 662*, for example, the plaintiffs similarly objected to the defendants' bill of costs, arguing that requiring them "to pay such costs would have a chilling effect upon prospective LMRDA plaintiffs and would thus dissuade union members from bringing suit under the LMRDA to assert their rights." No. 05-C-552, 2008 WL 3981989, at *10 (E.D. Wis. Aug. 22, 2008). The court disagreed, stating:

> Expecting that an unsuccessful union member be held to the same standard as nearly every other civil litigant and be accountable for the consequences of an unsuccessful lawsuit should not dissuade any union member from attempting to defend rights he firmly believes were violated by a union. The LMRDA contains no provision exempting plaintiff union members from paying the taxable costs of the union when the plaintiffs lose in their suit. The absence of such a provision, particularly in light of the fact that assessing the prevailing party's costs against a losing party is an ordinary and expected aspect of litigation, strongly indicates that Congress did not consider prohibiting the assessment of costs against plaintiff union members to be necessary to ensure the overall mission of the LMRDA. Finally, the LMRDA is a statute with a long history, but nonetheless, the plaintiffs have failed to cite to any case where a court has held that the public policy interests underlying the LMRDA prohibit the taxing of costs against unsuccessful union member plaintiffs.

*Id.* (citations omitted). Another court ruled similarly in *Commer v. McEntee*, explaining that awarding costs under Rule 54(d) "does not limit the right of a member to sue its union" but instead "simply holds that union member financially accountable for the allowable costs, pursuant to statute, that are incurred by a union in the successful defense of claims brought in

4

federal court." No. 00CIV.7913R, 2007 WL 2327065, at *2 (S.D.N.Y. Aug. 13, 2007). The Court finds the reasoning in these cases persuasive and similarly concludes that Section 101(a)(4) does not preclude an award of costs here.

None of the caselaw provided by Romero warrants a different conclusion. Romero first cites to *SEIU v. Local 1199 N.E.*, 70 F.3d 647, 654 (1st Cir. 1995), claiming that the First Circuit "found that the imposition of fees as part of an arbitral award constituted a limitation on the right to sue in violation of Title I." Doc. 49 at 2. In doing so, he misrepresents the First Circuit's ruling and omits key details differentiating the fees in *SEIU* from the costs in this case. In *SEIU*, the union defendant "refused to negotiate over a reduction in or a reasonable repayment schedule for the per capita taxes or a waiver of the late fees, unless the [union plaintiff] arranged for the withdrawal of [a different] lawsuit that its members had brought in Connecticut." 70 F.3d at 653. The First Circuit noted that the per capita taxes were "payments that the [defendant union] expect[ed] to collect in full as a matter of course," and there was no claim that these taxes were "usually waived, reduced, or rescheduled." *Id.* at 654. For this reason, "the failure to negotiate over reducing or rescheduling them cannot on these facts be said to be a 'penalty' on the 'right to sue.'" *Id.* On the other hand, the late fee had a "usurious" rate and was "routinely waived by the [defendant union]." *Id.* Given this context, the First Circuit concluded that "conditioning a waiver on the [plaintiff union] securing withdrawal of its members' lawsuit may be a deterrent to members suing." *Id.* The First Circuit therefore vacated the late fees award and remanded the case for more factfinding as to whether "enforcement of the late fee portion of the arbitrator's award was in retaliation for the filing of the [Connecticut] lawsuit." *Id.*

With this full context in mind, the Court finds that—contrary to what Romero asserts— *SEIU* only strengthens the conclusion that Section 101(a)(4) does not bar a prevailing union

party from recovering costs under Rule 54(d)(1). Here, the costs Defendants seek are those presumptively recoverable by prevailing parties in federal litigation, Fed. R. Civ. P. 54(d)(1), and Romero has not provided any reason to believe that Defendants seek these costs as a form of "retaliation for the filing of [this] lawsuit," *SEIU*, 70 F.3d at 654. Thus, the costs sought here are more akin to *SEIU*'s per capita taxes than the late fees. As was the case in *SEIU*, these routine costs "cannot . . . be said to be a 'penalty' on the 'right to sue.'" *Id.*

Romero's citation to *International Organization of Masters, Mates, & Pilots v. Prevas*, 175 F.3d 341 (4th Cir. 1999), also fails to support his argument. In *Prevas*, the Fourth Circuit held that Section 101(a)(4) precluded a union from bringing "a [$200,000] contract claim for damages against a member who sued the union without exhausting internal union remedies as provided in the union constitution." *Id.* at 343. The Fourth Circuit noted that Section 101(a)(4) prohibited unions from using "internal disciplinary measures, such as fines or expulsion, to retaliate against members who sue without first exhausting internal union remedies," and reasoned that there was "no material difference between the threat of fine or expulsion and the threat of a judgment for damages." *Id.* at 345. But here, as explained, there is no indication that the bills of costs are retaliation against Romero for exercising his rights. And there is a clear difference between the threat of a $200,000 damages claim and the threat of costs routinely assessed against non-prevailing litigants. While the former is "likely to chill the exercise of a member's right to [sue]," *id.*, the latter is no more of a deterrent to union members than it is to any other litigant in federal court, *see Vought*, 2008 WL 3981989, at *10.

For these reasons, the Court finds that Romero has not met his burden of showing that it would be inappropriate to award costs to Defendants. *See Beamon*, 411 F.3d at 864.

**II.     Amount of Costs**

The Court now determines whether Defendants have met their burden of establishing that the costs they incurred were reasonable and necessary. *See Cork Plastering Co.*, 570 F.3d at 906. Defendants seek to recover summons and subpoena, transcript, and copying fees, and they have both submitted itemizations of their requested costs and support for why they believe those costs are reasonable and necessary. Romero has not provided—nor does the Court find—any reason to disagree. Thus, the Court awards LRS costs in the amount of $4,212.12 and awards Local 731 costs in the amount of $3,555.85.

**CONCLUSION**

For the foregoing reasons, the Court taxes $4,212.12 in favor of LRS and against Romero and $3,555.85 in favor of Local 731 and against Romero.


Dated: July 29, 2026

SARA L. ELLIS
United States District Judge